**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0406n.06

**No. 09-4302**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jun 22, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| LAMAR W. COOPER, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: SUHRHEINRICH, COLE, and COOK, Circuit Judges.

COOK, Circuit Judge. After officers discovered a gun on Lamar W. Cooper during a *Terry* stop, a grand jury charged him with possession of a firearm and ammunition by a convicted felon. Cooper moved to suppress evidence as the product of an illegal search and seizure. The district court granted his motion. We reverse.

I.

Cooper's troubles began with a traffic stop. While patrolling a high-crime area during the afternoon, Officers Robert Sauterer and Robert Taylor drove past three people parked outside an apartment building in a silver Toyota. Upon checking the car's registration, the officers found that it was listed as a *red* Toyota. The officers later testified that, in their experience, a discrepancy

between a car's actual color and the color recorded on its registration often suggests a stolen vehicle. The officers turned around, pulled up behind the car, and activated their overhead lights to investigate.

Sauterer approached the driver's side of the car while Taylor approached the passenger's side. Taylor testified that, as he approached, Cooper appeared agitated, looked around nervously, and hid his hands. When Taylor told Cooper to show his hands and asked if he had anything, Cooper admitted to having marijuana. Taylor instructed him to exit the vehicle and retrieved the marijuana from Cooper's pocket. As Taylor patted Cooper down for weapons, Cooper leaned closer to the vehicle. Taylor grabbed him by his waistband and again asked him if he had anything. Cooper then admitted he had a gun. Taylor handcuffed Cooper. When Taylor turned Cooper around to recover the weapon, the gun fell to the ground. The officers determined that the vehicle was not stolen.

A grand jury charged Cooper with possession of a firearm and ammunition by a convicted felon. Cooper moved to suppress the evidence procured during the stop. Following a hearing, the district court determined that the officers lacked reasonable suspicion to initiate the seizure and granted Cooper's motion. The government now appeals.

II.

Neither party contests that a seizure occurred; they battle over whether the seizure was justified. The government claims that because the officers reasonably suspected criminal activity, the district court improperly granted Cooper's motion to suppress.

We employ a two-part analysis when determining the constitutionality of a *Terry* stop. *United States v. See*, 574 F.3d 309, 313 (6th Cir. 2009). First, we assess "whether there was a proper basis for the stop" by "examin[ing] the totality of the circumstances" and asking "whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion." *Id*. (internal quotation marks and citation omitted). Second, we determine "whether the degree of intrusion . . . was reasonably related in scope to the situation at hand." *Id*. (alteration in original) (internal quotation marks and citation omitted). Because neither party challenges the district court's finding that the officers did not exceed the permissible scope of the stop with their search and seizure of Cooper (which we see no reason to question), we concentrate on the first part of the analysis—determining whether the officers had reasonable suspicion to justify the stop itself.

Considering "the evidence in the light most likely to support the district court's decision," we review the district court's factual findings for clear error and its legal conclusions de novo. *Id*. (internal quotation marks and citation omitted). "The specific determination of whether reasonable suspicion of criminal activity exists to justify a traffic stop is a mixed question of law and fact which we review de novo." *United States v. Campbell*, 549 F.3d 364, 370 (6th Cir. 2008). But because "the district court is at an institutional advantage, having observed the testimony of the witnesses and

understanding local conditions," we must grant "due weight . . . to the inferences drawn from the facts by resident judges." *United States v. Townsend*, 305 F.3d 537, 542 (6th Cir. 2002) (internal quotation marks and citation omitted). And we must also grant "due weight" to inferences drawn by the officers involved because "a police officer views the facts through the lens of his police experience and expertise." *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

The district court found that "[t]he only information the officers possessed supporting their belief that the car could have been stolen was that the color of the Toyota did not match the color of the registered vehicle corresponding to the plates and that the car was parked in a high crime area." *United States v. Cooper*, No. 1:09-CR-353, 2009 WL 3321384, at *4 (N.D. Ohio Oct. 13, 2009) (order granting motion to suppress). This information, the court held, did not suffice to establish reasonable suspicion when considered in conjunction with the other circumstances involved—including that the officers observed no illegal activity prior to the mid-afternoon seizure, all of the car's other characteristics matched its registration information, and no one had reported the license plate or car as stolen. Because the district court's assessment shortchanged the officers' previous-experience testimony as a basis for tying the color discrepancy to likely theft, we disagree with its decision to grant suppression.

The district court began its *Terry*-stop analysis on the right track. First, as the district court found, the officers' testimony established that the stop occurred in a high-crime area. The officers described a specific, circumscribed location—a particular intersection—and noted the frequency of

car thefts and other crimes in that area. *See United States v. Caruthers*, 458 F.3d 459, 467–68 (6th Cir. 2006) (permitting consideration of high-crime location where area was limited to a specific intersection because doing so alleviated "special concerns of racial, ethnic, and socioeconomic profiling"). This factor properly fits into the officers' reasonable-suspicion calculus. *See United States v. Johnson*, 620 F.3d 685, 692–93 (6th Cir. 2010) (explaining that a court may consider defendant's presence in a high-crime area "in the totality of the circumstances" so long as that factor is not "given undue weight" (internal quotation marks and citation omitted)); *United States v. Smith*, 594 F.3d 530, 541 (6th Cir. 2010) (observing that while a defendant's presence in a high-crime location "may not, without more, give rise to reasonable suspicion," it is "relevant to the reasonable suspicion calculus" (internal quotation marks and citation omitted)). And, second, along with the high-crime-area feature, the district court acknowledged that the officers observed a discrepancy between the color of the vehicle and its registration information. *See United States v. Caro*, 248 F.3d 1240, 1246 (10th Cir. 2001) (observing that officer's determination that car color differed from the registration-reported color, coupled with defendant's inability to recall car owner's last name, "suggest[ed] that [the officer] should have taken all appropriate steps to ascertain the legal status of the car").

But the court ended its analysis too soon. In stating that only these two factors supported a finding of reasonable suspicion, the district court neglected the officers' testimony that, in their experience, this color discrepancy triggered a suspicion of car theft. Taylor testified that "[a] lot of times with stolen vehicles, they will go steal a vehicle, and a lot of times they will steal a plate off

of a car that matches it, to put on . . . the stolen vehicle"—a situation Taylor had observed more than twenty times. Sauterer concurred that the color discrepancy caught his attention because "[o]ccasionally, cars are stolen or license plates are stolen and they are put on cars to mimic the same model, style." We must afford "due weight" to such an inference. *See Ornelas*, 517 U.S. at 699; *United States v. Cortez*, 449 U.S. 411, 418 (1981) ("[T]he evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."); *United States v. Marxen*, 410 F.3d 326, 331–32 (6th Cir. 2005) ("The Court has held that an officer's specialized training and experience may permit him to make inferences from and deductions about the cumulative information available to him that 'might well elude an untrained person.'" (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002))).

We thus find that this testimony—in conjunction with the color discrepancy and the fact that the officers spotted the vehicle in a high-crime area—suffices to establish "specific and articulable facts which gave rise to reasonable suspicion," notwithstanding the other factors Cooper relies upon. *See See*, 574 F.3d at 313 (internal quotation marks and citation omitted).

Attempting to avoid this conclusion, Cooper focuses upon two cases—*United States v. Keith*, 559 F.3d 499 (6th Cir. 2009), and *United States v. Townsend*, 305 F.3d 537 (6th Cir. 2002). But these cases have limited precedential value in assessing reasonable suspicion. *See United States v. Torres-Ramos*, 536 F.3d 542, 553 (6th Cir. 2008) (explaining that one reasonable suspicion determination will seldom be a useful precedent for another). And these cases are nonetheless

distinguishable.  In neither *Keith* nor *Townsend* did this court assess whether the officers had reasonable suspicion of car theft; both involved other suspected criminal activity.  And neither case concerned the paint-color discrepancy and accompanying officer testimony at issue here.  Instead, each involved a wholly distinct set of circumstances—including presenting dubious travel plans, possessing multiple cell phones, and glancing in the direction of the police.  *See Keith*, 559 F.3d at 505–07; *Townsend*, 305 F.3d at 542–45.

III.

For the above reasons, we reverse the district court's order granting Cooper's motion to suppress.

**COLE, Circuit Judge, dissenting**.  Because the *Terry* stop conducted by the officers was not supported by reasonable suspicion, I respectfully dissent.

The vehicle was legally parked during the middle of the afternoon in front of an apartment complex.  As the officers drove past the vehicle, they did not observe any suspicious activity by the vehicle's occupants, nor was the location of the vehicle suspicious.  The officers had not received any reports of criminal activity on Ridpath Avenue that afternoon.  Even so, the officers ran the vehicle's license plate number.  The search revealed that the vehicle was registered not to a silver Toyota, but a red one.  The vehicle matched the registration in all other respects.  Based on this information, the officers suspected the vehicle was stolen.  But the vehicle had not been reported stolen, and the officers had not received a complaint of a stolen vehicle matching the vehicle's description.  The color discrepancy alone—easily caused by a clerical error or recent paint job—is insufficient to create reasonable suspicion that the vehicle was stolen, and neither the officers' previous experience, nor the fact that the vehicle was parked in a high-crime area, tips the scale toward a finding of reasonable suspicion.

Aside from this innocuous detail, the majority relies in part on the fact that this was a high-crime area, but we must be careful not to give this factor "undue weight," *United States v. Johnson*, 620 F.3d 685, 693 (6th Cir. 2010); *see also United States v. Caruthers*, 458 F.3d 459, 467 (6th Cir. 2006) (cautioning against relying on this contextual factor "too easily or too heavily"), and the testimony here does not support the conclusion that *car thefts* occurred in this area with "unusual

regularity," *Caruthers*, 458 F.3d at 468 (quoting *United States v. Montero-Camargo*, 208 F.3d 1122, 1138 (9th Cir. 2000)). For this reason, the fact that this vehicle happened to be parked in a general "high-crime area" is of de minimis significance to our analysis. *See id.* (explaining that this factor was permissibly considered given that "the crimes that frequently occur in the area *are specific and related to the reason for which Caruthers was stopped*" (emphasis added)).

Additionally, the majority criticizes the district court for "neglect[ing] the officers' testimony," Maj. Op. at 5, that in their experience car thieves sometimes steal the license plate of a similar vehicle and put it on the stolen vehicle. But the motion to suppress hearing transcript reveals that the district court did not "neglect" this testimony, but found it unpersuasive given the fact that here neither the vehicle nor the plates had been reported stolen. When pressed by the district court on the relevance of the officers' previous experience to the situation at hand, the government conceded that they failed to put forth evidence that in those previous experiences the stolen plates *had not been reported stolen*—as was the case here. This testimony, then, does not support the conclusion that the officers' actions were reasonable in light of the benign circumstances of that afternoon.

Accordingly, because I believe the totality of the circumstances presented to the officers that afternoon, properly viewed in light of their expertise and experience, was insufficient to create reasonable suspicion that the vehicle was stolen, I would **AFFIRM** the district court's grant of Cooper's motion to suppress.