In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3590

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

JESUS URIBE,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. 2:10-cr-17-JMS-CMM—**Jane E. Magnus-Stinson,** *Judge*.

ARGUED APRIL 11, 2012—DECIDED FEBRUARY 13, 2013

Before WOOD, WILLIAMS, and TINDER, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Early one morning, Jesus Uribe was driving along Interstate 70 in Indiana. Apparently, he was not speeding or driving too slowly, weaving recklessly across lanes, crossing the dividing line, or giving any indication that he was intoxicated. Nor is there evidence that Uribe's vehicle, a blue Nissan Altima with Utah plates, was in violation of any of Indiana's numerous vehicle requirements—no malfunctioning brake lights, improperly tinted window, visibly

altered muffler, or expired license plate. Only one aspect of Uribe's travel was interesting: the blue Nissan he was driving had a registration number that traced back to a white Nissan. Although this color discrepancy alone is not unlawful either in Indiana, where Uribe was driving, or in Utah, where the car was registered, the deputy following Uribe's car initiated a traffic stop "to check for registration compliance." That stop led to a search of the vehicle, nearly a pound of heroin, and a federal indictment.

Uribe filed a motion to suppress the evidence obtained following the stop, contending that the seizure violated the Fourth Amendment because the deputy had no reasonable suspicion or probable cause to detain him. Although the government offered no evidence to support its objection to the motion, it argued that there was reasonable suspicion that the car was stolen and that its driver was violating Indiana law by operating a vehicle displaying a different car's registration number. The district court granted Uribe's motion, finding the government's explanations insufficient to establish that at the time of the stop the deputy had a reasonable, articulable suspicion that Uribe was engaged in criminal activity.

In this interlocutory appeal, we must determine whether one lawful act in isolation—driving a car of one color with a registration number attached to a car of a different color—gives rise to reasonable suspicion that a driver is engaged in criminal activity. Because on this record, investigatory stops based on color discrepancies

alone are insufficient to give rise to reasonable suspicion, we affirm.

## I.  BACKGROUND

Shortly after two o'clock in the morning on July 14, 2010, Deputy Dwight Simmons of the Putnam County (Indiana) Sheriff's Department was working traffic enforcement and driving behind a blue Nissan Altima traveling eastbound on Interstate 70. When Deputy Simmons performed a Bureau of Motor Vehicles registration inquiry on the car's Utah license plate number, he received information for a white 2002 Nissan. In his narrative arrest report, Deputy Simmons stated that he initiated an enforcement stop of the vehicle "to check for registration compliance." That report did not include any other description of the vehicle, and it did not mention the driver's pre-stop behavior.[1]

---

[1]    The part of that narrative relevant to the investigatory stop reads, in its entirety:

On 7-14-10 while working traffic enforcement on I-70, Deputy Simmons of the Putnam County Sheriff's Office[] was traveling eastbound in the vicinity of the 45 mile marker behind a blue Nissan Altima[] bearing Utah license plates. Deputy Simmons performed a BMV registration inquiry on the license plate, and received a return on a white 2002 Nissan. Deputy Simmons initiated an enforcement stop of the vehicle in the vicinity of the 48 mile marker, to check for registration compliance.

After Deputy Simmons pulled the car over, he observed that the driver, Jesus Uribe, appeared nervous. Eventually, another officer arrived with a canine, which gave a positive alert. Uribe gave Deputy Simmons permission to search the vehicle, and the officer with Deputy Simmons found two packages containing nearly a pound of heroin. Uribe was indicted for possessing with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(i).

Uribe moved to suppress the heroin, arguing that Deputy Simmons did not have reasonable suspicion to perform the traffic stop based on the color of the car alone. He also argued that no Indiana or Utah law requires car owners to amend their vehicle registration information to reflect a change in car color. So, according to Uribe, there was no reasonable suspicion for the stop. Uribe did not challenge the execution of the search or the validity of his consent to it.

The government did not request an evidentiary hearing or submit an affidavit to put Deputy Simmons's additional observations, suspicions, and experience in the record. (Uribe attached Deputy Simmons's post-arrest narrative to the motion to suppress.) Nonetheless, the government responded to Uribe's arguments by contending that Deputy Simmons's twelve years of experience taught him that stolen cars are often repainted to evade detection. The government also argued that because Indiana prohibits operating a vehicle with a registration number belonging to any other vehicle, Deputy Simmons could have rea-

sonably suspected that Uribe was committing a registration violation.

The district court granted Uribe's motion to suppress, finding that the record did not support Deputy Simmons's alleged knowledge that stolen cars are painted different colors. The court also concluded that the Indiana traffic code provision the government cited only applied to vehicles registered to Indiana residents. The district court denied the government's motion for reconsideration and its belated request for an evidentiary hearing, deciding that the government was not entitled to a second chance after failing to meet its burden on the motion to suppress. This interlocutory appeal under 18 U.S.C. §§ 3231 and 3731 followed.

## II. ANALYSIS

When reviewing a district court's decision on a motion to suppress, we consider questions of law de novo, the district court's determinations of reasonable suspicion and probable cause de novo, and questions of fact for clear error. *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *United States v. Brown*, 232 F.3d 589, 591-92 (7th Cir. 2000).

An investigatory stop complies with the Fourth Amendment if the brief detention is based on reasonable suspicion that the detained individual has committed or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968); *United States v. Grogg*, 534 F.3d 807, 810 (7th Cir. 2008). An officer initiating an investigatory stop

must be able to point to "specific and articulable facts" that suggest criminality so that he is not basing his actions on a mere hunch. *Terry*, 392 U.S. at 21; *see also United States v. Dennis*, 115 F.3d 524, 532 (7th Cir. 1997) ("[I]n reviewing a reasonable suspicion determination, we require law enforcement authorities to articulate the specific characteristics exhibited by the person or object to be detained which aroused the authorities' suspicion in the particular case before us . . . ."). We evaluate reasonable suspicion based on the totality of the circumstances known to the officer at the time the stop is made. *United States v. Hicks*, 531 F.3d 555, 558 (7th Cir. 2008). However, "[t]he officer's subjective motivations for stopping and detaining a suspect are not relevant to the reasonableness inquiry." *United States v. Bullock*, 632 F.3d 1004, 1012 (7th Cir. 2011). The government bears the burden of establishing reasonable suspicion by a preponderance of the evidence. *United States v. Longmire*, 761 F.2d 411, 418 (7th Cir. 1985).

Deputy Simmons's post-arrest narrative seems to identify only one fact that led him to conduct the investigatory stop: a discrepancy between the observed color of the car Uribe was driving and the color indicated on the car's registration. Both parties acknowledge that the color discrepancy itself was lawful, because neither Indiana nor Utah requires a driver to update his vehicle registration when he changes the color of his car.

In addition to the color discrepancy, the government argues that the timing of the stop—just after two o'clock

in the morning—raises the level of suspicion.[2] The government did not present any evidence of Deputy Simmons's experience and expertise or of any officer's belief that the context of the stop made its timing suspicious.

From the record, we conclude that the timing of the stop in this context does not raise suspicion. Uribe's vehicle[3] was not, for example, exiting a scene following gunfire via the only available street, nor was Uribe acting suspiciously in an area known for criminal activity. *See United States v. Brewer*, 561 F.3d 676, 678 (7th Cir. 2009) (finding the timing of a stop suspicious because it "reinforced the suspicion [that the vehicle was connected to reported gunfire] since few people are on the road at 2:30 a.m. and . . . there was no other traffic" leaving the apartment complex immediately after the gunfire); *see also United States v. McHugh*, 639 F.3d 1250, 1257-58 (10th Cir. 2011) (finding reasonable suspicion based on an early-morning detention in an area known for criminal activity, information from an armed private security officer and a police dispatcher

---

[2] We note that the part of Deputy Simmons's narrative included in the record only mentions the time of the stop once, when he states that the canine unit arrived on the scene at 2:30 a.m.

[3] While we refer to the blue Nissan as "Uribe's vehicle," it was registered to someone else. Because Deputy Simmons was not aware of that fact at the time of the stop, it is not relevant to our analysis.

that the defendants were suspected of having a weapon in their vehicle, and a report from the security guard about the defendants' suspicious behavior prior to the detention); *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993) (finding reasonable suspicion when officers observed the defendant appearing to engage in a hand-to-hand drug transaction in a known drug area at 1:00 a.m.). Rather, Uribe was in an out-of-state vehicle traveling on an interstate highway in Indiana at two o'clock in the morning—apparently without committing any traffic infractions. So, while we consider timing a part of the history of the detention decision, it does not raise the level of suspicion attached to the color discrepancy.

Uribe's motion to suppress presents an issue of first impression in this circuit and, apparently, in the federal courts: whether a discrepancy between the observed color of a car and the color listed on its registration alone is sufficient to give rise to reasonable suspicion of criminal activity. Where our sister circuits have considered color discrepancies, they have relied on the discrepancy as only one of several factors establishing reasonable suspicion.[4]

---

[4] In *United States v. Cooper*, the Sixth Circuit found reasonable suspicion from a color discrepancy and a vehicle's presence in a specific high-crime area known for frequent car thefts, along with officers' testimony that, in their experience, color discrepancy triggered a suspicion of car theft. 431 Fed. App'x 399, 401-02 (6th Cir. 2011). The Ninth Circuit assumed, but did

(continued...)

Although it appears that no federal court has addressed the exact issue presented in this case, several state courts have done so. In *Andrews v. State*, a Georgia appellate court held that it was reasonable for an officer to infer from a color discrepancy that a car's license plate had been switched in violation of Georgia law. 658 S.E.2d 126, 127-28 (Ga. Ct. App. 2008); *see also Aders v. State*, 67 So. 3d 368, 371 (Fla. Dist. Ct. App. 2011) (finding a color discrepancy sufficient to create a reasonable suspicion that a driver committed a second-degree misdemeanor by improperly transferring a license plate). An Indiana appellate court found that a color discrepancy supported reasonable suspicion that a "vehicle had a mismatched plate, and as such, could be stolen or retagged." *Smith v. State*, 713 N.E.2d 338, 342 (Ind. Ct. App. 1999).

State cases have also come out in the other direction. In *Commonwealth v. Mason*, a Virginia appellate court

---

(...continued)

not decide, that a color discrepancy and presence in a high-crime area was a "thin basis" for reasonable suspicion that a vehicle was stolen. *United States v. Rodgers*, 656 F.3d 1023, 1026-27 (9th Cir. 2011). And in *United States v. Caro*, the Tenth Circuit found that an officer had reasonable suspicion to continue a detention initiated by a traffic stop due to a color discrepancy and the defendant's failure to recall the registered owner's last name. 248 F.3d 1240, 1246 (10th Cir. 2001); *see also United States v. Clarke*, 881 F. Supp. 115, 117 (D. Del. 1995) (reasonable suspicion from color discrepancy, out-of-state plate, high-crime area, and officer's knowledge that vehicles of that specific make and model were often subject to theft).

determined that color discrepancy alone is insufficient to establish reasonable suspicion because "the benefit gained from stopping individual vehicles based solely on a disparity in the color listed on the vehicle's registra-tion . . . is marginal when compared to the constitutional rights of drivers and their passengers who are seized during such a stop." No. 1956-09-02, 2010 WL 768721, at *3 (Va. Ct. App. Mar. 9, 2010) (unpublished decision) (internal quotations omitted); *see also State v. O'Neill*, Nos. 06-S-3456, 06-S-3457, 2007 N.H. Super. LEXIS 2, at *8 (N.H. Super. Ct. Apr. 17, 2007) (unpublished decision) (because the color discrepancy violated no law, the officer "could not possibly have suspected the defendant of any criminal wrongdoing").

### A. No Reasonable Suspicion of Vehicle Theft

The government first contends that Deputy Simmons's investigatory stop was justified by the reasonable suspicion that Uribe was driving a stolen vehicle. Ordi-narily, this is where we would review all the circum-stances known to the officer that weigh in favor of or against a finding of reasonable suspicion and consider the officer's experience, expertise, and understanding of the context of the stop to determine whether the observed conduct was objectively, reasonably, and articulably suspicious. But the government provided no evidence to tip the scales from a mere hunch to something even approaching reasonable and articulable suspicion, despite attempting to justify a detention based on one observed incident of completely innocent behavior in a non-suspicious context. Without testimony or an

affidavit from Deputy Simmons (or anyone else), we know nothing about the extent of his experience with car theft, how the police department trains its officers to detect stolen vehicles, or whether anything about the context of the stop raises the level of suspicion.

Perhaps most importantly, the government provided no information on the correlation between stolen vehicles and repainted ones. We do not know whether ninety-nine percent of repainted cars are stolen, which would suggest a color discrepancy is highly probative of criminal activity, or whether less than one percent are, which would suggest a color discrepancy is completely innocuous. As we weigh Uribe's Fourth Amendment rights against the benefits of using investigatory stops to catch car thieves and recover stolen vehicles, these numbers matter. Without them, we cannot conclude that a color discrepancy alone is probative of wrongdoing without the risk of subjecting a substantial number of innocent drivers and passengers to detention. *See Reid v. Georgia*, 448 U.S. 438, 441 (1980) (no reasonable suspicion where "circumstances describe a very large category of presumably innocent travelers, who would be subject to virtually random seizures were the Court to conclude that as little foundation as there was in this case could justify a seizure").

Although we focus on an "innocent" color discrepancy, ultimately "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *United States v. Sokolow*, 490 U.S. 1, 10

(1989) (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). Our review of the totality of the circumstances here leads us to conclude that no reasonable suspicion of vehicle theft attaches to a completely lawful color discrepancy in the absence of any evidence suggesting otherwise.[5] In light of that conclusion, Deputy Simmons's decision to stop Uribe's vehicle lacked reasonable suspicion that the vehicle was stolen.

## B. No Reasonable Suspicion of Registration Violation

We turn next to the government's argument that Deputy Simmons could have believed that Uribe was in violation of an Indiana vehicle registration requirement.[6] As we discuss below, the government has not shown that the requirement applies to Uribe's Utah-registered vehicle. And because the suspected violation is not unlawful, it cannot form the basis of reasonable suspicion.

In *Delaware v. Prouse*, the Supreme Court held that a police officer may stop a vehicle when the officer has "at least articulable and reasonable suspicion that a

---

[5] Even if we were to consider the timing of the stop as an additional circumstance, nothing in the record suggests that a repainted vehicle observed at two o'clock in the morning on an interstate highway is any more suspicious than one observed at noon.

[6] The government did not argue that there was a reasonable suspicion that Uribe was in violation of any Utah registration provision.

motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law." 440 U.S. 648, 663 (1979). However, a registration compliance check without any suspicion of criminal activity violates the Fourth Amendment. *Id.* (in the absence of articulable and reasonable suspicion, "stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment."). Even when reasonable suspicion exists, the Supreme Court is wary of the compliance-check rationale because "[m]any violations of minimum vehicle-safety requirements are observable," and license plates are "themselves evidence that the vehicle is properly registered." *Id.* at 660; *see also id*. at 660-61 (finding that randomly stopping registered vehicles for "document checks" is not "necessary in order to ascertain compliance with the State's registration requirements").

The government suggests that Deputy Simmons could have believed that Uribe was violating Indiana Code Section 9-18-2-27(a), which provides that "a vehicle required to be registered under this chapter may not be used or operated upon the highways if the motor vehicle displays . . . [a] registration number belonging to any other vehicle . . . ." The government asserts that when combined with other provisions of Article 18, Chapter 2, which governs motor vehicle registration, this requirement extends to vehicles driven by nonresidents on Indiana highways, including Uribe's. Specifically, the government points to Section 9-18-2-29, which provides

that "motor vehicle[s]" are within the class of "[v]ehicles subject to registration," and Section 9-18-2-2, which allows nonresidents to operate vehicles in Indiana "if the vehicle is properly registered in the jurisdiction in which the nonresident is a resident." From these two provisions, the government concludes that nonresidents are subject to Indiana's registration-swapping prohibition.

The government's analysis is noticeably incomplete because the first part of the very provision it invokes limits the prohibition to vehicles "required to be registered under [Article 18, Chapter 2]." Ind. Code § 9-18-2-27. This raises a completely different issue from whether a nonresident can drive a vehicle registered in another state in Indiana, which is what Section 9-18-2-2 addresses.

Chapter 2 requires the registration of motor vehicles that "(1) are subject to the motor vehicle excise tax under [Section] 6-6-5; and (2) will be operated in Indiana," *id.* § 9-18-2-1(a), in addition to other vehicles not relevant here, such as commercial and recreational vehicles and those belonging to Indiana residents. When we assemble the pieces of the statutory puzzle relevant to Uribe, Section 9-18-2-27 prohibits registration swapping for motor vehicles, § 9-18-2-1(a), that are subject to Indiana's excise tax, § 9-18-2-1(a)(1), and are operated in Indiana, § 9-18-2-1(a)(2). Similarly, the nonresident provision the government cites only applies in these same situations, when "a nonresident . . . owns a vehicle required to be registered under this article." *Id.* § 9-18-2-2.

The problem with the government's argument is that there is no evidence that a vehicle registered in Utah is subject to Indiana's motor vehicle excise tax simply because its driver travels on one of Indiana's many highways. (In fact, the excise tax chapter provides for refunds when "(1) the owner registers the vehicle for use in another state; and (2) the owner pays tax for use of the vehicle to another state for the same time period which the tax was paid under this chapter." Ind. Code § 6-6-5-7.4(a).)

The government simply has not shown that Section 9-18-2-27 applies in this situation. And since the registration provision asserted by the government does not apply to the Utah-registered vehicle Uribe was driving, a suspected violation of it could not be the criminal activity at the heart of the objective reasonable suspicion analysis. *See United States v. McDonald*, 453 F.3d 958, 961 (7th Cir. 2006) ("An officer cannot have a reasonable belief that a violation of the law occurred when the acts to which an officer points as supporting probable cause are not prohibited by law."). So, the government has failed to show that Deputy Simmons had reasonable suspicion to stop Uribe's vehicle to investigate its compliance with this registration provision.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's decision granting Uribe's motion to suppress.