# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 10 2019, 10:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Quinton A. Rush,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 10, 2019

Court of Appeals Case No.
19A-CR-697

Appeal from the White Superior Court

The Honorable Robert B. Mrzlack, Judge

Trial Court Cause No.
91D01-1602-F2-72

**Bradford, Judge.**

# Case Summary

In April of 2016, White County Sheriff's Deputy Matthew White initiated a traffic stop of a vehicle being driven by Quinton Rush after observing multiple traffic infractions. A search of the vehicle led to the discovery of plastic baggies, a handgun, large amounts of cash, electronic scales, 920.29 grams of marijuana, and 26.82 grams of cocaine. The State charged Rush with, *inter alia*, Level 2 felony cocaine dealing, Level 6 felony marijuana dealing, and Class C misdemeanor operating a vehicle with a controlled substance in the body. In March of 2018, a jury trial was held, after which Rush was found guilty as charged. Rush contends that the trial court erroneously admitted evidence obtained from the search of his vehicle because Deputy White lacked reasonable suspicion to stop Rush's vehicle. Rush also contends that the trial court erroneously admitted the statements he made to Deputy White during the traffic stop because they were obtained in violation of his *Miranda* rights. We affirm.

# Facts and Procedural History

At approximately 2:31 a.m. on April 10, 2016, Deputy White was assisting Deputy Josh Shoemaker on a traffic stop when he observed a northbound vehicle being driven by Rush. As Deputy White left the traffic stop and began following Rush's vehicle, he noticed the rear right-side taillight had a lightbulb that was not illuminated. Deputy White radioed dispatch in order to have it run Rush's vehicle registration. Dispatch confirmed that the vehicle was a black

2011 Ford Fusion, registered to Quinton Rush. Deputy White asked dispatch to confirm that the vehicle registration stated that the vehicle was black, because the vehicle he was following was "bright electric blue." Tr. p. 149. Dispatch confirmed that the vehicle was registered as black in color. At trial, Deputy White testified that "as I'm looking at this vehicle, it's a bright electric blue. It is the middle of the night, but it's not – I like to give people the benefit of the doubt, but it's not a dark navy blue color, it's bright electric blue[.]" Tr. p. 149. Deputy White initiated a traffic stop and approached the driver's side of Rush's vehicle. The moment that the driver's-side window was rolled down, Deputy White smelled burnt marijuana. Deputy White asked Rush why he smelled marijuana, to which Rush replied that he had "just smoked a joint earlier." Tr. p. 151. Deputy White also explained to Rush that he had stopped him because of the color discrepancy of his vehicle, and Rush indicated that the vehicle color had never been changed. At that point, Deputy White had Rush and his passenger Tameka Thomas exit the vehicle and called Deputy Shoemaker for assistance. Before Deputy Shoemaker arrived, Deputy White patted down Rush for officer safety and located a roll of cash in his pants pocket.

[3] Upon Deputy Shoemaker's arrival, Deputy White conducted a search of Rush's vehicle. In the center console, Deputy White located a pipe with burnt residue that smelled like marijuana, a loaded handgun, and a loaded magazine. In the backseat of the vehicle, Deputy White found a bag containing a smoking device which contained a brown and green leafy substance that he believed to be marijuana and a jacket containing a large roll of cash. After searching the inside

of the vehicle, Deputy White began to search the trunk. Deputy White discovered a blue duffel bag containing two one-gallon plastic baggies and inside the baggies were stacks of smaller plastic baggies. Deputy White also discovered a glass jar full of marijuana and marijuana buds.

[4] After finding the marijuana, Deputy White explained to both Rush and Thomas that he would be taking both of them to jail because they were both within reach of the two pipes found in the vehicle. Thomas asked why they were both going to jail, and Deputy White again stated that it was due to both Rush and her being in proximity to the pipes. Rush stated, "I guess I'll take it." Ex. 20.

[5] Once Rush was placed into custody, Deputy White completed the search of the vehicle. After resuming his search of the trunk, Deputy White found two scales, marijuana, and a jar containing a white powdery substance that field-tested positive for cocaine. Subsequent testing confirmed that Deputy White discovered an aggregate of 920.29 grams of marijuana and 26.82 grams of cocaine from Rush's vehicle.

[6] On May 17, 2016, the State charged Rush with Level 2 felony cocaine dealing and Level 6 felony marijuana dealing. On August 2, 2016, Rush moved to suppress both the evidence discovered during the search of his vehicle and the statements he made to police, both of which motions were denied. On April 12, 2017, the State also charged Rush with Level 4 felony possession of cocaine, Class C misdemeanor operating a vehicle with a controlled substance in the

body, Class B misdemeanor marijuana possession, and Level 6 felony marijuana possession. On March 13 and 14, 2018, a jury trial was held, after which Rush was found guilty as charged. The trial court merged the possession convictions with the dealing convictions. On February 27, 2019, the trial court sentenced Rush to seventeen and one-half years for the cocaine-dealing conviction, one year for the marijuana-dealing conviction, and sixty days for the operating-a-vehicle-with-a-controlled-substance-in-the-body conviction, all to be served concurrently.

# Discussion and Decision

[7] Rush contends that the trial court erred in admitting into evidence the items seized from his vehicle during the traffic stop and the statements he made to police. We review the trial court's decision to admit evidence for an abuse of discretion. *Ware v. State*, 816 N.E.2d 1167, 1175 (Ind. Ct. App. 2004). The trial court's decision is an abuse of discretion if it is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

## I. Traffic Stop

[8] Rush contends that because the police lacked reasonable suspicion to stop his vehicle pursuant to the Fourth Amendment of the United States Constitution and Article 1, Section 11, of the Indiana Constitution, the trial court erroneously admitted the items seized by police during the search of his vehicle.

> Under the Fourth Amendment to the United States Constitution, a seizure in the form of a traffic stop is permissible if an officer has at least reasonable suspicion that a traffic law, or other law has been violated. Whether reasonable suspicion for a seizure existed requires examination of the totality of the circumstances to determine whether the detaining officer had a particularized and objective basis for suspecting legal wrongdoing. The reasonable suspicion requirement is met where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe illegal activity has occurred or is about to occur.

*Johnson v. State*, 992 N.E.2d 955, 957–58 (Ind. Ct. App. 2013), *trans. denied*.

[9] When a defendant also challenges an investigatory stop under Article 1, Section 11, of the Indiana Constitution, the burden falls on the State to establish that the police conduct was reasonable under the totality of the circumstances. *Marshall v. State*, 117 N.E.3d 1254, 1262 (Ind. 2019). Although police may stop a vehicle when they observe minor traffic law violations, they still must do so in accordance with Article 1, Section 11. *Id*. To determine whether a traffic stop was reasonable under the totality of the circumstances we evaluate: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Id*.

[10] Indiana Code subsection 9-18.1-3-1(a) provides that a person who desires to register a vehicle must provided certain information in his application to the Bureau of Motor Vehicles, including, *inter alia*, a "brief description of the vehicle to be registered, including the identification number and *the color of the*

*vehicle*." (emphasis added). Indiana Code subsection 9-18.1-3-1(d) provides that a "person that makes a false statement in an application to register a vehicle under this article commits a Class C infraction." Deputy White observed Rush's vehicle to be bright electric blue, but the vehicle was registered as black; therefore, we conclude that pursuant to the Fourth Amendment, Deputy White had a reasonable suspicion that Rush had committed a Class C infraction, at the very least. *See Smith v. State*, 713 N.E.2d 338, 343 (Ind. Ct. App. 1999) (concluding that a police officer had reasonable suspicion to initiate a traffic stop upon observing that the license plate on defendant's blue and white vehicle was registered to a yellow vehicle.), *trans. denied*.

[11]    Moreover, we conclude that Deputy White's traffic stop was reasonable pursuant to Article 1, Section 11, of the Indiana Constitution. First, based on the color discrepancy, Deputy White had a high degree of suspicion that Rush had committed a Class C infraction. Second, the degree of intrusion that the traffic stop cause to Rush's ordinary activities was minute. This was a routine traffic stop for a traffic infraction which only turned into a prolonged procedure once Deputy White smelled the odor of marijuana emanating from inside Rush's vehicle. If this traffic stop was intrusive to Rush in any way, it was caused by his own criminal wrongdoing. Third, as our Indiana Supreme Court has acknowledged, "law enforcement has at least a legitimate, if not a compelling, need to enforce traffic-safety law[.]" *Marshall*, 117 N.E.3d at 1262.

[12]    Rush directs our attention to *U.S. v. Uribe*, 709 F.3d 646 (7th Cir. 2013) in support of his argument that a color discrepancy of a vehicle, alone, is

insufficient to provide reasonable suspicion for a traffic stop. *Uribe*, however, is easily distinguishable from this matter. In *Uribe*, the court concluded that color discrepancy, alone, was insufficient to provide reasonable suspicion that a vehicle was stolen. 709 F.3d at 654. The court, however, did not reach a conclusion as to whether an Indiana registered vehicle's color discrepancy could provide reasonable suspicion of a violation of Indiana's vehicle registration statute. Rather, the court noted that the government had not shown that the Indiana statute applied in the case before it, because Uribe was driving a vehicle registered in Utah. *Id*. at 653. The court noted that "since the [Indiana] registration provision asserted by the government does not apply to the Utah-registered vehicle Uribe was driving, a suspected violation of it could not be the criminal activity at the heart of the objective reasonable suspicion analysis." *Id*. at 654. Here, however, we are being asked to determine whether the color discrepancy of a vehicle registered in Indiana provides a reasonable suspicion that a violation of Indiana law has occurred, and we conclude that it does. Deputy White had reasonable suspicion that Rush was in violation of Indiana Code section 9-18.1-3-1, a Class C infraction. The trial court did not abuse its discretion in admitting the evidence obtained as a result of the traffic stop.[1]

---

[1] Because we conclude that the color discrepancy was sufficient to provide a reasonable suspicion for the traffic stop, we need not address Deputy White's second reason for stopping Rush, which was an unilluminated taillight, a reason which Rush argues is contrary to the police officer's body camera footage. Moreover, we need not address whether Rush's admission regarding the taillight was obtained in violation of his *Miranda* rights.

## II. *Miranda*

[13]     Rush contends that because the statements he made to Deputy White were obtained in violation of his *Miranda* rights, the trial court erroneously admitted them into evidence. Given the overwhelming evidence of guilt, we conclude that any *Miranda* violation in this case was harmless beyond a reasonable doubt. Not every error in the admission of evidence requires a reversal. *Carr v. State*, 934 N.E.2d 1096, 1107 (Ind. 2010). "And before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id*. (internal quotations and citations omitted). "The improper admission of evidence is harmless error when the reviewing court is satisfied that the conviction is supported by substantial independent evidence of guilt so that there is no substantial likelihood that the challenged evidence contributed to the conviction." *Meadows v. State*, 785 N.E.2d 1112, 1122 (Ind. Ct. App. 2003), *trans. denied*.

[14]     In this matter, Rush's statements aside, the evidence of guilt is overwhelming. Upon first contact with Rush's vehicle, Deputy White smelled burnt marijuana emanating from inside. A search of Rush's vehicle led to the discovery of pipes, plastic baggies, a handgun, electric scales, large amounts of cash, 920.29 grams of marijuana, and 26.82 grams of cocaine. Moreover, it is undisputed that Rush was the driver of the vehicle and that it was registered in his name. This evidence, alone, overwhelmingly supports Rush's convictions.

[15]     The judgment of the trial court is affirmed.

Vaidik, C.J., and Riley, J., concur.