# United States Court of Appeals
## For the Eighth Circuit
_____

No. 22-2133
_____

United States of America

*Plaintiff - Appellee*

v.

Joshua Brown

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids
_____

Submitted: January 11, 2023
Filed: February 27, 2023
_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Joshua Brown was pulled over while riding his motorcycle, and a pat-down search revealed a firearm. After the district court[1] denied his motion to suppress the firearm, Brown conditionally pleaded guilty to possession of a firearm by a felon in

_____

[1]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

violation of 18 U.S.C. § 922(g)(1). *See* Fed. R. Crim. P. 11(a)(2). He appeals the denial of his motion to suppress, and we affirm.

**I.**

In the early morning hours of July 18, 2020, Cedar Rapids Police Department Officer Kyzer Moore was patrolling a neighborhood in the southwest part of the city. The neighborhood had been the site of several crimes involving stolen vehicles with "switched" license plates or disguising paint jobs. Officer Moore was involved in several of those cases.

While patrolling, Officer Moore noticed Brown's orange motorcycle because it was the only vehicle out at that time of day. Brown did not commit any traffic violations and the motorcycle's license plate was properly displayed. Officer Moore ran a license check and learned that the plate was registered to a *blue* motorcycle.

Officer Moore followed the motorcycle as it turned onto Third Street Southwest. He saw that the motorcycle was about to pull into the driveway of a residence on Third Street Southwest. The Third Street residence was familiar to law enforcement as one where narcotics, stolen property, and stolen vehicles were frequently found. Officer Moore activated his lights, and Brown came to a stop. A pat-down search of Brown revealed a firearm, several knives, and brass knuckles.

Brown was indicted on three firearm-related offenses under 18 U.S.C. § 922. He moved to suppress the firearm, arguing that Officer Moore did not have reasonable suspicion to make the traffic stop.

At the suppression hearing, Officer Moore testified about some of the reasons that a license plate may not correspond to the vehicle to which it is affixed. For example, an owner may replace an expired license plate with an unexpired plate from a different vehicle. Or an owner may be barred or suspended from registering a vehicle and use a license plate from another vehicle. Or the vehicle may have been

stolen, and the driver put a different license plate on it to avoid detection. Officer Moore also described several innocent explanations too: repainting the vehicle but not updating the registration information, making a mistake when registering the vehicle, or putting on the wrong license plate when an owner has several vehicles.

Officer Moore further testified that he was aware of several past vehicle-related crimes in both the general neighborhood and the immediate vicinity of Brown's stop. Many of these incidents involved vehicles with colors that did not match their registrations or vehicles that otherwise had anomalies with their license plates. Indeed, Officer Moore was involved in at least three vehicle stops near or linked to the Third Street residence where Brown was headed. On one of these occasions, just a month before Brown's stop, the driver had just left the Third Street residence when Officer Moore conducted a license check and confirmed that the vehicle was stolen. On another, Officer Moore stopped a vehicle that lacked a license plate and discovered that the driver had a suspended license. He also learned that the driver had been stopped earlier in the evening by another officer near the Third Street residence. At that earlier stop, the vehicle had a license plate, but the registration information did not match the vehicle's color. Finally, on a third occasion, only a couple blocks away from the Third Street residence, a trailer had a license plate that did not belong on it. The trailer turned out to be stolen, and the driver had a suspended license.

The district court found that Officer Moore had reasonable suspicion to stop Brown and denied Brown's motion. The court found that Officer Moore had a particularized and objective basis for the stop based on three factors known to him at the time. One was the color discrepancy between the vehicle and the registration information. Another was his knowledge of the surrounding neighborhood's multiple incidents of vehicle theft and other vehicular crimes that involved license-plate discrepancies and noncompliant registrations. The third was his experience with the specific location—a residence associated with at least three cases involving stolen vehicles, two of which were different colors than their registrations indicated.

Brown appeals the denial of his motion to suppress, arguing that Officer Moore lacked reasonable suspicion for the stop. He contends that changing the color of a vehicle is "innocent, common behavior" and that Officer Moore did not have a particularized basis to suspect that Brown had stolen the motorcycle.

## II.

We apply a mixed standard of review to a district court's denial of a motion to suppress evidence. *United States v. Mitchell*, 55 F.4th 620, 622 (8th Cir. 2022). We review factual findings for clear error, while we review *de novo* the ultimate conclusion of whether the Fourth Amendment was violated. *Id.*

The Fourth Amendment protects against unreasonable searches and seizures. A traffic stop is a reasonable seizure if it is supported by probable cause or reasonable suspicion of criminal activity. *United States v. Allen*, 43 F.4th 901, 907 (8th Cir. 2022). Reasonable suspicion is "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Kansas v. Glover*, 589 U.S. ---, 140 S. Ct. 1183, 1187 (2020). "The standard depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at 1188 (emphasis and internal quotation marks omitted). Officers are allowed "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted). In analyzing whether an officer had reasonable suspicion, we look to the totality of the circumstances. *Glover*, 140 S. Ct. at 1191.

We conclude that Officer Moore had reasonable suspicion to make the traffic stop. He testified that a color discrepancy might indicate that a vehicle is stolen, the driver has a suspended license, or the registration is expired. These are all valid reasons to make a traffic stop. *See, e.g.*, *United States v. James*, 52 F.4th 1035, 1037-38 (8th Cir. 2022) (stolen); *Glover*, 140 S. Ct. at 1191 (license); *United States*

-4-

*v. McLemore*, 887 F.3d 861, 864-65 (8th Cir. 2018) (registration). And his suspicion was based cumulatively on particularized, objective facts: the color discrepancy between the vehicle's paint and its registration information, his knowledge of the neighborhood where the stop occurred, and his experience with the specific location of the stop. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("[T]he fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a *Terry* analysis."); *United States v. Dortch*, 868 F.3d 674, 680 (8th Cir. 2017) (holding that an officer had reasonable suspicion to conduct a pat-down search based in part on his familiarity with a specific building associated with gang activity).

Brown argues that a color discrepancy cannot factor into an officer's reasonable suspicion. We see no reason why it cannot under appropriate circumstances. The Seventh Circuit case *United States v. Uribe*, 709 F.3d 646, 651-52 (7th Cir. 2013), is instructive. There, the court held that color discrepancy *alone* could not support reasonable suspicion of vehicle theft to make a traffic stop absent any evidence suggesting otherwise. *Id.* at 652. But that is not the situation here because color discrepancy was not the sole basis for Officer Moore's suspicion. Instead, the discrepancy was a contributing factor along with his particularized knowledge of and experience with vehicle-related crimes involving license-plate mismatches near the location of Brown's stop. *Uribe* acknowledged such a distinction: "Where our sister circuits have considered color discrepancies, they have relied on the discrepancy as only one of several factors establishing reasonable suspicion." *Id.* at 651 & n.4. One of these sister-circuit cases, *United States v. Cooper*, 431 F. App'x 399, 402 (6th Cir. 2011), upheld a finding of reasonable suspicion based on an officer's testimony about his knowledge and experience with vehicle-related crime and the fact that the vehicle was spotted in a high-crime area. Like the officer in *Cooper*, Officer Moore "described a specific, circumscribed location" (the Third Street residence) and "noted the frequency of car thefts and other crimes in that area." *See id.* Thus, the district court did not err in concluding that

Officer Moore had reasonable suspicion based, in part, on the color discrepancy between the vehicle and its registration.[2]

Brown counters by pointing to possible innocent explanations for the color discrepancy. We are not persuaded. The Supreme Court has "consistently recognized that reasonable suspicion need not rule out the possibility of innocent conduct." *Navarette v. California*, 572 U.S. 393, 403 (2014) (internal quotation marks omitted). Ultimately, "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *United States v. Sokolow*, 490 U.S. 1, 10 (1989). And as we have already noted, this degree of suspicion may be informed by an officer's particular knowledge and experience. *See Arvizu*, 534 U.S. at 273. Further, the totality-of-the-circumstances test "precludes th[e] sort of divide-and-conquer analysis" that Brown attempts in attacking Officer Moore's partial reliance on the color discrepancy. *See United States v. Collins*, 883 F.3d 1029, 1032 (8th Cir. 2018). Our task is not to analyze the individual fact of a color discrepancy "in isolation" but rather in the totality of the circumstances. *See id.* In all, Officer Moore's extensive testimony about his personal knowledge and experience with license-plate anomalies and vehicular crimes both at the specific location of the stop and in the surrounding neighborhood satisfy us that he had reasonable suspicion to stop Brown.

---

[2]Brown points to *United States v. Rodgers* from the Ninth Circuit, which expressed doubt about whether color discrepancy and presence in a high-crime location can give rise to reasonable suspicion. *See* 656 F.3d 1023, 1027 (9th Cir. 2011) ("[The two factors] at best provide a thin basis for reasonable suspicion that the car was stolen."). But *Rodgers* is distinguishable because it did not involve an officer's experience with a specific, circumscribed location like the Third Street residence here or the location in *Cooper*. At any rate, "[i]n the context of a commonsense, nontechnical standard like reasonable suspicion, which must be evaluated in light of the whole mass of facts and circumstances present in a given situation, it is natural for cases that resemble each other in certain ways or at a high level of generality to come out differently as a result of key details that weigh differently in one than in the other." *Dortch*, 868 F.3d at 681.

## III.

For the foregoing reasons, we affirm the district court's denial of Brown's motion to suppress.

_____