[Cite as *State v. Hawkins*, 2018-Ohio-1983.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2017-07-013 |
| | : | O P I N I O N |
| - vs - | | 5/21/2018 |
| | : | |
| JUSTIN HAWKINS, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI20160145


Jess C. Weade, Fayette County Prosecuting Attorney, John M. Scott, Jr., 110 East Court Street, Washington C.H., Ohio 43160, for plaintiff-appellee

Steven H. Eckstein, 1208 Bramble Avenue, Washington C.H., Ohio 43160, for defendant-appellant


**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, Justin Hawkins, appeals from his conviction for the failure to comply with an order or signal of a police officer, arguing the Fayette County Court of Common Pleas erred when it denied his motion to suppress. For the reasons stated below, we affirm the trial court's denial of appellant's motion to suppress and uphold his conviction.

{¶ 2} At approximately 3:00 a.m. on May 20, 2016, Patrolman Jeffery Heinz, a 14-

year veteran police officer with the city of Washington Court House, was finishing up a traffic stop on Draper Street when a black GMC SUV driven by appellant passed his patrol car. Heinz's onboard license plate reader captured the license plate of the vehicle, and Heinz ran the license plate number through dispatch to obtain the vehicle's registration information. Heinz was advised that the license plate was registered to a 2001 *white* GMC SUV. Heinz quickly concluded his original traffic stop before locating the black GMC SUV and pulling it over. Heinz initiated the traffic stop of the SUV because he was concerned that the vehicle might have been stolen or had a "fictitious registration."

{¶ 3} After stopping the SUV, Heinz explained to appellant that the color discrepancy was the reason for the stop and asked appellant for his license, registration, and proof of insurance. Appellant did not have any identification on him. While obtaining appellant's personal information, Heinz was able to verify the last six numbers of the GMC's VIN by providing the numbers to dispatch, who verified that the numbers matched the records of the Bureau of Motor Vehicles ("BMV").

{¶ 4} Heinz returned to his patrol car to write appellant a warning and to run the social security number appellant provided. The social security number belonged to a different individual. Heinz again approached appellant's vehicle and verified appellant's name, date of birth, and his social security number. Although Heinz instructed appellant to "sit tight" while Heinz ran the second social security number, appellant began to slowly drive away. Heinz followed in his patrol car.

{¶ 5} While Heinz followed appellant's vehicle, he ran the second social security number provided by appellant. This number also belonged to someone other than appellant. Heinz then ran appellant's name and date of birth through dispatch. He was advised that appellant did not have a valid driver's license and had a warrant for his arrest out of Delaware County. Heinz activated his patrol car's lights and sirens, and appellant pulled over the SUV

he was operating. However, after Heinz informed appellant there was a warrant out for his arrest, appellant "gunned the engine and took off at a rapid rate." Heinz called for assistance and set off in pursuit of appellant, with his vehicle's lights and sirens activated.

{¶ 6} After nearly hitting a police cruiser, appellant veered off the road and drove through yards before striking a bush or a small tree. Appellant then abandoned his vehicle and fled on foot. He was apprehended by Heinz and arrested. Appellant's vehicle was inventoried, and two credit cards were found in the glovebox of the SUV. The credit cards were not in appellant's name and had previously been reported stolen.

{¶ 7} On June 3, 2016, appellant was indicted on two counts of receiving stolen property in violation of R.C. 2913.51(A) and (C), felonies of the fifth degree, and one count of failing to comply with an order or signal of a police officer in violation of R.C. 2921.331(B) and (C)(5)(a)(ii), a felony of the third degree as appellant's operation of the motor vehicle caused a substantial risk of serious physical harm to persons or property. Appellant moved to suppress all evidence relating to his traffic stop on the basis that Heinz "lacked reasonable and articulable suspicion to make an investigatory stop." Appellant contended the "mismatch" between the SUV's color and the color listed on the vehicle's registration did not provide reasonable suspicion to justify the stop.

{¶ 8} The only witness to testify at the hearing on appellant's motion was Heinz, who testified as follows regarding the traffic stop:

> [Prosecutor]: What if any concern to you have that a plate [sic], cause it sounds like it matched the type of vehicle, but it didn't match the color of the vehicle. What reason would you have for any concern?
>
> Heinz: Yeah typically with my, with my experience when subjects will steal a vehicle and that is why BMV started implementing the colors is, in years past somebody would steal a vehicle.
>
> * * *

In years past, with my experience, if someone would steal a vehicle, they would just go through a parking lot anywhere and find a vehicle that would match the vehicle in which they were driving. Throw that [plate] on there and then drive around.

[Prosecutor]: And have you had that experience personally with vehicles that have been stolen in and around Washington Court House?

Heinz: Me personally, no. However, in our city, yes. We have license plates [that] have been taken off and done that, yes.

* * *

[Defense Counsel]: [You] talked a little bit about your experience investigating. How many car thefts have you investigated in your career?

Heinz: Car thefts?

* * *

I can't put a number, but it's been quite a few.

[Defense Counsel]: As the, have you ever investigated them, or where you the officer on the scene or how did it, how did that work?

Heinz: I have both had investigations of vehicle thefts [sic]. I have also had recovery of stolen vehicles and I have also had recovery of stolen license plates as well.

[Defense Counsel]: You said you've never experienced a situation like this. Where a, where as you said, where a plate may have been switched from a vehicle?

Heinz: Me personally?

[Defense Counsel]: Yes.

Heinz: No.

[Defense Counsel]: Okay.

Heinz: But yes, it is done.

* * *

[Defense Counsel]: [J]ust for clarification purposes, the only reason that [appellant] was stopped was due to the color of the

vehicle not matching registration?

Heinz: The, the vehicle did not match the vehicle [sic]. Which at the time I believed was [a] fictitious registration.

[Defense Counsel]: What I asked was the sole reason you stopped Mr. Hawkins was because the color of the vehicle did not match the color that you were told by a dispatcher that the vehicle should have been on the registration?

Heinz: That would be correct.

{¶ 9} When questioned about whether driving a vehicle that is a different color than the color listed on the vehicle's registration is, "in and of itself," a crime, Heinz initially testified he did not know. However, he then clarified that "[w]e have been told by our prosecutors yes, it is. It is. However, we do not charge for the color discrepancy." Heinz testified that a person could, however, be charged with "fictitious registration because the colors [do] not match."

{¶ 10} After considering Heinz's testimony, the trial court denied appellant's motion to suppress, stating that there was "nothing unreasonable or constitutionally infirm with the conduct of Officer Heinz in this case." The court found "reasonable and articulable suspicion sufficient to initiate the initial detention * * * to determine the validity of the * * * registration issue that was raised when * * * he ran the registration through the dispatcher and was notified that it was to a white vehicle."

{¶ 11} Following the denial of his motion to suppress, appellant was tried to a jury. Heinz was the sole witness to testify at trial. Following his testimony, appellant moved for acquittal pursuant to Crim.R. 29, and his motion was denied. The matter was submitted to the jury, who acquitted appellant of both counts of receiving stolen property but found him guilty of failing to comply with the order or signal of a police officer. The jury further found appellant's operation of the motor vehicle caused a substantial risk of serious physical harm. Appellant was sentenced to 36 months in prison.

{¶ 12} Appellant appealed, raising the following as his sole assignment of error:

{¶ 13} THE TRIAL COURT ERRED IN FINDING LAW ENFORCEMENT HAD A REASONABLE AND ARTICULABLE SUSPICION [APPELLANT] WAS ENGAGED IN CRIMINAL ACTIVITY OR OPERATING HIS VEHICLE IN VIOLATION OF THE LAW IN DENYING HIS MOTION TO SUPPRESS AND THEREBY ALLOWING IMPROPER EVIDENCE INTO THE TRIAL IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 14 OF THE OHIO CONSTITUTION.

{¶ 14} In his sole assignment of error, appellant argues the trial court erred in denying his motion to suppress as Patrolman Heinz lacked reasonable articulable suspicion to initiate the traffic stop. He contends the color discrepancy between the paint color of the SUV and the registration for the vehicle did not provide sufficient suspicion to justify the traffic stop. He also argues that because the stop was unlawful, all "derivative evidence" should be suppressed pursuant to the "fruit of the poisonous tree" doctrine and his Crim.R. 29 motion for acquittal should be granted for lack of sufficient evidence.

{¶ 15} Our review of a trial court's denial of a motion to suppress presents a mixed question of law and fact. *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038, ¶ 10. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12.

- 6 -

**{¶ 16}** "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops." *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 11. "Ohio recognizes two types of lawful traffic stops." *State v. Stover*, 12th Dist. Clinton No. CA2017-04-005, 2017-Ohio-9097, ¶ 8. The first involves a non-investigatory stop in which an officer has probable cause to stop a vehicle because the officer observed a traffic violation. *Id.*, citing *State v. Moore*, 12th Dist. Fayette No. CA2010-12-037, 2011-Ohio-4908, ¶ 31. "The second type of lawful traffic stop is an investigative stop, also known as a *Terry* stop, in which the officer has reasonable suspicion based on specific or articulable facts that criminal behavior is imminent or has occurred." *Id.*, citing *State v. Bullock*, 12th Dist. Clinton No. CA2016-07-018, 2017-Ohio-497, ¶ 7. *See also Moore* at ¶ 33, citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868 (1968). The present case involves the latter of the two stops.

**{¶ 17}** With respect to a *Terry* stop, the concept of "reasonable and articulable suspicion" has not been precisely defined; it has been described as something more than an undeveloped suspicion or hunch but less than probable cause. *State v. Baughman*, 192 Ohio App.3d 45, 2011-Ohio-162, ¶ 15, citing *Terry* at 20-21. The "reasonable suspicion standard" under *Terry* is an objective, not a subjective, one. *Stover* at ¶ 9, citing *State v. McCandlish*, 10th Dist. Franklin No. 11AP-913, 2012-Ohio-3765, ¶ 7. For this reason, the propriety of an investigative stop must be "viewed in light of the totality of the surrounding circumstances, from the perspective of a reasonably prudent police officer on the scene guided by his experience and training." *Baughman* at ¶ 15, citing *State v. Batchili*, 133 Ohio St.3d 403, 2007-Ohio-2204, paragraph two of the syllabus; and *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph one of the syllabus.

**{¶ 18}** In the present case, Heinz testified he initiated a traffic stop because appellant was driving a black GMC SUV when the registration indicated the vehicle was white, and this

discrepancy led him to believe the vehicle had a fictitious registration or might have been stolen. This court has not previously addressed the issue of whether the discrepancy between the color of a defendant's vehicle and the color listed in registration records accessed by a police officer provides the officer with reasonable suspicion to perform an investigative traffic stop. Courts that have considered the issue are split.

{¶ 19} The Seventh Circuit Court of Appeals, the Arkansas Supreme Court, the Florida Supreme Court, and the Fifth District Court of Appeals have all determined that a discrepancy in an automobile's paint color found via a database check does not amount to reasonable suspicion of criminal activity sufficient to justify a warrantless investigatory stop. *See United States v. Uribe*, 709 F.3d 646 (7th Cir.2013); *Schneider v. State*, 459 S.W.3d 296 (Ark.2015); *State v. Teamer*, 151 So.3d 421 (Fla.2014); *State v. Unger*, 5th Dist. Stark No. 2016 CA 00148, 2017-Ohio-5553. In many of these cases, the courts considering the issue have noted that there was no requirement under state law to update a vehicle registration when an owner changes the color of his or her car. *Uribe* at 650 (noting "the color discrepancy itself was lawful, because neither Indiana nor Utah requires a driver to update his vehicle registration when he changes the color of his car"); *Schneider* at 299 (noting Arkansas has no requirement that the owner of a vehicle change the registration to reflect the color of a vehicle in the event it is painted or the color is otherwise altered); *Teamer* at 427-428 (finding a color discrepancy is not "'inherently suspicious' or 'unusual enough' or 'so out of the ordinary' as to provide an officer with a reasonable suspicion of criminal activity, especially given the fact that it is not against the law in Florida to change the color of your vehicle without notifying the DHSMV"). The courts concluded that the lawful color discrepancy alone was not probative of wrongdoing and therefore did not authorize a traffic stop. *Uribe* at 652; *Schneider* at 299-300; *Teamer* at 428 ("to find reasonable suspicion based on this single noncriminal factor would be to license investigatory stops on nothing

more than an officer's hunch").

{¶ 20} Other courts that have considered the issue have come out in the other direction. Appellate courts in Georgia, Indiana, and Idaho have all determined that the discrepancy between an automobile's paint color and the color reported on a vehicle's registration amounts to reasonable suspicion of criminal activity to authorize an investigatory stop when the officer believes the vehicle was stolen or has a fictitious plate. *See Smith v. State*, 713 N.E.2d 338, 342 (Ind.App.1999) (finding that the color discrepancy gave an officer "reasonable suspicion to believe that * * * vehicle had a mismatched plate, and as such, could be stolen or retagged"); *Andrews v. State*, 289 Ga. App. 679, 681 (2008) (finding the color discrepancy gave an officer reasonable and articulable suspicion for the investigatory stop where the officer had reason to believe the license plate had been improperly switched or transferred in violation of Georgia law); *State v. Creel*, 2012 Ida. App. Unpub. LEXIS 267, *4-5 (2012) (finding that the color discrepancy gave the officer reasonable and articulable suspicion to initiate the stop where the officer testified the vehicle "could have had fictitious license plates in violation of I.C. § 49-456(3) or the vehicle could have been stolen and the plates were from another S-10 pickup"). In these cases, the courts noted that the officer "was entitled to draw from the facts in light of his experience" and training. *Andrews* at 681. *See also Creel* at * 5.

{¶ 21} We are persuaded by the approach taken in *Smith, Andrews*, and *Creel* and find that under the facts of the present case, reasonable and articulable suspicion existed to authorize Heinz's stop of appellant's vehicle. The color discrepancy between the vehicle's actual paint color (black) and the BMV's registration (white) gave Heinz reason to believe that the vehicle may have been stolen or the license plate switched from another vehicle. Heinz testified that although he had not personally experienced a situation where a car thief had replaced a vehicle's original license plate with a stolen plate taken from a similar vehicle, from

his 14 years of law enforcement experience he knew that this type of criminal behavior occurred. He further testified that such criminal activity had occurred in and around Washington Court House.

{¶ 22} Accordingly, for the reasons set forth above, we find that the trial court did not err in denying appellant's motion to suppress. The discrepancy in the vehicle's color coupled with Heinz's experience and belief that the vehicle or its plates might have been stolen provided reasonable and articulable suspicion to authorize the investigatory stop of appellant's vehicle.

{¶ 23} Therefore, as the traffic stop was lawful, we find no merit to appellant's arguments that the evidence flowing from the stop must be suppressed pursuant to the "fruit of the poisonous tree" doctrine. Heinz trial testimony about the events that occurred leading up to, during, and after the traffic stop was properly admitted. Through Heinz's testimony the state presented sufficient evidence to sustain appellant's conviction for failing to comply with an order or signal of a police officer. Appellant fled from Heinz after being advised there was a warrant for his arrest. He ignored the police cruiser's lights and sirens – visible and audible signals to stop his vehicle – and in fleeing from Heinz, caused a substantial risk of harm to both property and persons. *See, e.g., State v. Monnin*, 12th Dist. Warren CA2016-07-058, 2017-Ohio-1095, ¶ 13-30.

{¶ 24} The arguments set forth in appellant's sole assignment of error are therefore without merit and his assignment of error is overruled.

{¶ 25} Judgment affirmed.


RINGLAND and PIPER, JJ., concur.