[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Hawkins,* Slip Opinion No. 2019-Ohio-4210.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-4210

THE STATE OF OHIO, APPELLEE, *v*. HAWKINS, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Hawkins,* Slip Opinion No. 2019-Ohio-4210.]**

*When an officer encounters a vehicle the whole of which is painted a different color from the color listed in the vehicle-registration records and the officer believes, based on his experience, that the vehicle or its displayed license plates may be stolen, the officer has a reasonable, articulable suspicion of criminal activity and is authorized to perform an investigative traffic stop.*

(No. 2018-1177—Submitted April 24, 2019—Decided October 16, 2019)

CERTIFIED by the Court of Appeals for Fayette County,

No. CA2017-07-013, 2018-Ohio-1983.

_____

KENNEDY, J.

{¶ 1} This case was accepted as a certified conflict between judgments of the Twelfth District and Fifth District Courts of Appeals.  The Twelfth District certified the issue in conflict as follows:

"Does the discrepancy between the paint color of a vehicle and the paint color listed in vehicle registration records accessed by a police officer provide the officer with reasonable articulable suspicion to perform a lawful investigative traffic stop where the officer believes the vehicle or its displayed license plates may be stolen[?]"

153 Ohio St.3d 1474, 2018-Ohio-3637, 106 N.E.3d 1259, quoting the court of appeals' journal entry.

**{¶ 2}** We answer the question in the affirmative and hold, based on these facts, that when an officer encounters a vehicle the whole of which is painted a different color from the color listed in the vehicle-registration records and the officer believes, based on his experience, that the vehicle or its displayed license plates may be stolen, the officer has a reasonable, articulable suspicion of criminal activity and is authorized to perform an investigative traffic stop.

**{¶ 3}** Accordingly, we affirm the judgment of the Twelfth District Court of Appeals.

## FACTS AND PROCEDURAL HISTORY

*Traffic Stop*

**{¶ 4}** Around 3:00 a.m. on May 20, 2016, Washington Court House Police Officer Jeffery Heinz was completing a traffic stop when a vehicle drove past his patrol car and Heinz heard his license-plate reader beep. A license-plate reader ("reader") is a computer-controlled camera system installed in some law-enforcement vehicles. The cameras, which are mounted to the trunk of the vehicle, capture images of the license plates of cars nearby. The system beeps to alert the officer that a plate has been captured, and an image of the plate is displayed on the computer's screen.

{¶ 5} Upon hearing the beep, Heinz looked at the computer screen and saw an image of a license plate with a Franklin County sticker. He ran the license-plate number and was informed by the dispatcher that the license plate was registered to a white 2001 GMC SUV. Heinz looked in his rearview mirror and saw that the vehicle, a GMC SUV, was black. He finished the traffic stop and began searching for the vehicle.

{¶ 6} Heinz located the vehicle and initiated a traffic stop. The driver, appellant, Justin Hawkins, pulled over. Heinz explained to Hawkins that the color discrepancy was the reason for the stop and asked to see Hawkins's identification. Hawkins told Heinz that he did not have identification with him. Heinz was able to verify that the vehicle's identification number matched the number registered with the Bureau of Motor Vehicles ("BMV") while he was attempting to learn Hawkins's personal information.

{¶ 7} Hawkins provided Heinz with a Social Security number; however, the dispatcher informed Heinz that the number was not associated with the name Hawkins. Heinz then verified with Hawkins his name and date of birth and asked him again for his Social Security number. Hawkins provided a second Social Security number. At this time, Hawkins informed Heinz that he was running low on gas. Heinz told Hawkins the location of a gas station.

{¶ 8} Hawkins pulled away, and Heinz followed in his patrol car. While following Hawkins, Heinz was notified by the dispatcher that the second Social Security number also was not Hawkins's. Heinz, still following Hawkins, then provided the dispatcher with Hawkins's name and date of birth. The dispatcher advised Heinz that Hawkins did not have a valid driver's license and that there was an outstanding warrant out of Delaware County for Hawkins's arrest.

{¶ 9} Heinz activated his lights to initiate a second traffic stop. Hawkins pulled his vehicle over, and Heinz approached. Heinz informed Hawkins of the outstanding warrant, and Hawkins sped away at a high rate of speed.

{¶ 10} Hawkins was apprehended after crashing the vehicle and fleeing on foot. Upon his arrest, the vehicle was inventoried and two credit cards that had been reported stolen were found in the glove compartment.

*Trial-Court Proceedings*

{¶ 11} On June 3, 2016, Hawkins was indicted on two counts of receiving stolen property in violation of R.C. 2913.51(A) and (C), felonies of the fifth degree, and one count of failing to comply with an order or signal of a police officer in violation of R.C. 2921.331(B) and (C)(5)(a)(ii), a felony of the third degree. He moved to suppress the evidence obtained relating to the traffic stop on the basis that Heinz had lacked reasonable suspicion to make an investigatory stop.

{¶ 12} At the suppression hearing, Heinz was the only witness to testify. He explained the basis for initiating the traffic stop. He stated that in his experience the discrepancy between the color in the BMV registration and the actual color of the vehicle could indicate that the vehicle and the license plates had been stolen. "[W]ith my experience, if someone would steal a vehicle, they would just go through a parking lot anywhere and find a vehicle that would match the vehicle in which they were driving. Throw [the license plate from that vehicle] on there and then drive around." He indicated that he had never encountered this personally, but he knew that it had occurred in the Washington Court House area.

{¶ 13} The trial court overruled Hawkins's motion to suppress. After a jury trial, Hawkins was convicted of failure to comply and acquitted of receiving stolen property. The trial court imposed a sentence of 36 months in prison.

*Appellate-Court Proceedings*

{¶ 14} Hawkins appealed to the Twelfth District Court of Appeals and advanced one assignment of error. He argued that the color discrepancy did not amount to a reasonable and articulable suspicion of criminal activity on which to base the traffic stop.

**{¶ 15}** The appellate court disagreed. It affirmed the trial court, concluding that the color discrepancy was sufficient to raise Heinz's suspicion that the vehicle was either stolen or that the license plate had been taken from another vehicle. 2018-Ohio-1983, 101 N.E.3d 520, ¶ 21. However, the Twelfth District granted Hawkins's motion to certify that its judgment was in conflict with the Fifth District's judgment in *State v. Unger*, 5th Dist. Stark No. 2016 CA 00148, 2017-Ohio-5553. We recognized that a conflict exists. 153 Ohio St.3d 1474, 2018-Ohio-3637, 106 N.E.3d 1259.

## ANALYSIS

### *Standard of Review*

**{¶ 16}** Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *See State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). But the appellate court must decide the legal questions independently, without deference to the trial court's decision. *Burnside* at ¶ 8.

### *The Fourth Amendment and Investigatory Stops*

**{¶ 17}** The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**{¶ 18}** We have held that in felony cases, Article I, Section 14 of the Ohio Constitution provides the same protection as the Fourth Amendment to the United

States Constitution. *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 12.

{¶ 19} "The Fourth Amendment permits brief investigative stops * * * when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' " *Navarette v. California*, 572 U.S. 393, 396, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014), quoting *United States v. Cortez*, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). This rule traces its beginning to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and therefore, the type of stop involved is referred to as a "*Terry* stop." In *Terry,* the United States Supreme Court "implicitly acknowledged the authority of the police to make a forcible stop of a person when the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." (Emphasis deleted.) *United States v. Place*, 462 U.S. 696, 702, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).

{¶ 20} Precisely defining "reasonable suspicion" is not possible, and as such, the reasonable-suspicion standard is " 'not readily, or even usefully, reduced to a neat set of legal rules.' " *Ornelas v. United States*, 517 U.S. 690, 695-696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), quoting *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The reasonableness of a *Terry* stop "depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce*, 422 U.S 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). The level of suspicion required to meet the reasonable-suspicion standard "is obviously less demanding than that for probable cause," and "is considerably less than proof of wrongdoing by a preponderance of the evidence" but is "something more than an 'inchoate and unparticularized suspicion or "hunch." ' " *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), quoting *Terry* at 27.

**{¶ 21}** To determine whether an officer had reasonable suspicion to conduct a *Terry* stop, the "totality of circumstances" must be considered and "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews,* 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), quoting *Cortez* at 411.

**{¶ 22}** "A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct." *Id.* at 277. In permitting detentions based on reasonable suspicion, "*Terry* accepts the risk that officers may stop innocent people." *Illinois v. Wardlow*, 528 U.S. 119, 126, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).

*Heinz Had Reasonable, Articulable Suspicion to Stop Hawkins*

**{¶ 23}** In this case, Heinz's suspicions were aroused when he saw a vehicle the entirety of which was a different color from the color indicated in the BMV records for the vehicle associated with the license plate that was captured by Heinz's reader. The facts that the color discrepancy itself is not a crime and that there may be an innocent explanation for the discrepancy do not mean that the discrepancy may be disregarded in determining whether Heinz had reasonable suspicion. *See Arvizu* at 274 (reviewing the totality of the circumstances requires consideration of an observation that "was by itself readily susceptible to an innocent explanation"). To assign noncriminal behavior no weight would "seriously undercut the 'totality of the circumstances' principle which governs the existence *vel non* of 'reasonable suspicion.' " *Id.* at 274-275. Behavior and circumstances that are noncriminal by nature may "be unremarkable in one instance * * * while quite unusual in another." *Id.* at 276. An officer is "entitled to make an assessment

of the situation in light of his specialized training and familiarity with the customs of the area's inhabitants." *Id.*

{¶ 24} In this case, Heinz testified that in his experience, the color discrepancy could signify that the vehicle either was stolen or had an illegal license plate. He knew that in the past, car thieves in the area had stolen a vehicle and then switched the license plates with a vehicle of the same make and model. Based on his professional experience, Heinz suspected that Hawkins was engaged in criminal activity. Therefore, we hold that under the totality of the circumstances, Heinz met the reasonable-and-articulable-suspicion standard necessary to perform a lawful investigative traffic stop.

## CONCLUSION

{¶ 25} Based on these facts, when an officer encounters a vehicle the whole of which is painted a different color from the color listed in the vehicle-registration records and the officer believes, based on his experience, that the vehicle or its displayed license plates may be stolen, the officer has a reasonable, articulable suspicion of criminal activity and is authorized to perform an investigative traffic stop.

{¶ 26} We affirm the judgment of the Twelfth District Court of Appeals.

Judgment affirmed.

O'CONNOR, C.J., and FRENCH, FISCHER, and DEWINE, JJ., concur.

STEWART, J., concurs in judgment only.

DONNELLY, J., dissents, with an opinion.

_____

**DONNELLY, J., dissenting.**

{¶ 27} This certified-conflict case began here with a poorly worded question, and it has ended with an erroneous answer. I would answer the conflict

question in the negative and reverse the judgment of the Twelfth District Court of Appeals.

{¶ 28} It is not reasonable for a police officer to infer that a vehicle's driver has stolen the vehicle, stolen license plates from a second vehicle, and switched the license plates whenever the officer notices a discrepancy between the color of a vehicle and the color listed in its registration records. In direct response to the conflict question, I would hold that such a discrepancy, by itself, does not provide the reasonable suspicion necessary to justify an investigatory seizure pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

{¶ 29} Additionally, although the certified question focuses on the specific context of vehicle-registration records, I have grave concerns about the state using the holding in this case in broader contexts. I would hold that a totality-of-the-circumstances analysis is inapplicable in cases in which only one fact is relied upon to justify an investigatory seizure. I would also hold that a police officer's knowledge of secondhand anecdotal information from an unidentified source does not constitute personal experience or specialized training.

{¶ 30} This case is a far cry from *Terry* and *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), both of which involved multiple facts that cumulatively led an officer to infer criminal activity, requiring a totality-of-the-circumstances analysis. Here, instead of having a single inference based upon a wealth of assorted facts, we have a wealth of inferences based upon a single fact. And the single fact in this case is that a 15-year-old black GMC SUV was registered as a 15-year-old white GMC SUV.

{¶ 31} Rather than asking whether such a color discrepancy alone provides a police officer with reasonable suspicion that the vehicle or its license plates may be stolen, the certified question asks whether such a color discrepancy *and* the officer's belief that the vehicle or license plates may be stolen provides a police

officer with reasonable suspicion that the vehicle or its license plates may be stolen. My belief is that the certifying appellate court confounded an officer's inferences from the circumstances with the circumstances themselves in order to portray the case as one requiring a consideration of the totality of multiple circumstances.

{¶ 32} In a review of a police officer's assertion of reasonable suspicion, "due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to *draw from the facts*." (Emphasis added.) *Terry*, 392 U.S. at 27, 88 S.Ct. 1868, 20 L.Ed.2d 889. An officer's experience and background are certainly important considerations when determining whether the inferences he drew from the facts were reasonable. *Id.*; *Arvizu* at 273. But an officer's inferences drawn from the facts, as well as the background and experience informing those inferences, are not part of the facts themselves. Thus, in this case, Officer Jeffery Heinz's background and his personal belief that the vehicle driven by Hawkins might have been stolen cannot be used to pad the sole fact supporting his investigatory seizure of Hawkins in order to justify a totality-of-the-circumstances analysis.

{¶ 33} In addition to accepting the false premise that this case involves the consideration of multiple facts, the majority defends the reasonableness of Officer Heinz's inferences by referencing the notion that police officers " 'draw on their own experience and specialized training' " when making inferences about those facts. Majority at ¶ 21, quoting *Arvizu*, 534 U.S. at 273, 122 S.Ct. 744, 151 L.Ed.2d 740. But Officer Heinz did not testify as to any personal experience or specialized training to justify the connection he drew between vehicle/registration color discrepancies and the switching of license plates on stolen vehicles.

{¶ 34} If anything, Officer Heinz's testimony regarding his personal experience on the police force suggested that license-plate-switching was *not* likely to have happened. Officer Heinz testified that he had been a police officer in

Washington Court House for over 14 years. Over the course of his career, he had investigated more vehicle thefts than he could count. He had investigated both vehicle thefts and license-plate thefts. But he had not once in his entire 14-year career encountered a situation in which a person had stolen a vehicle and replaced its license plates with plates that he had stolen from a similar vehicle of a different color. He assured the court, though, that "it is done." He did not cite any specialized training that had led to his understanding that "it is done." He simply indicated that such a crime had occurred one or more times in his city. The majority quotes a portion of Officer Heinz's testimony in which he implies that his knowledge of these crimes comes from his own experience. Majority opinion at ¶ 12. But that testimony was clarified when the officer was asked whether he had *personal* experience involving stolen vehicles with switched plates and he said that he did not.

{¶ 35} Because Officer Heinz's belief was based on secondhand anecdotal information from an unknown source rather than personal experience or specialized training, his personal belief does not add much weight to the analysis, let alone dispositive weight. More importantly, Officer Heinz's testimony about his secondhand information seemed to be an attempt to demonstrate the likelihood that a car thief might switch license plates in order to evade detection. But his testimony in no way demonstrated the likelihood that anyone driving a car with a vehicle/registration color discrepancy might be a car thief who had switched license plates.

{¶ 36} Ohio's laws and regulations governing vehicle registration, R.C. Chapter 4503 and Ohio Adm.Code 4501:1-7, do not address vehicle color at all, let alone require a driver to immediately file a new registration application to update or correct a vehicle's registered color. There is nothing unlawful in Ohio about

driving a vehicle whose color does not match the color listed on the vehicle's registration. The baseline here, then, is that driving such a vehicle is consistent with innocent conduct. If behavior is consistent with innocent conduct, it must be combined with additional conduct if it is to be used to establish reasonable suspicion of illegal conduct. *Terry*, 392 U.S. at 22, 88 S.Ct. 1868, 20 L.Ed.2d 889; *United States v. Sokolow*, 490 U.S. 1, 9-10, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *United States v. Cortez*, 449 U.S. 411, 419-420, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *United States v. Manzo-Jurado*, 457 F.3d 928, 935 (9th Cir.2006) ("Seemingly innocuous behavior does not justify an investigatory stop unless it is combined with other circumstances that tend cumulatively to indicate criminal activity").

{¶ 37} It is true that the proper inquiry for making a determination of reasonable suspicion is not whether each individual act is innocent or guilty. *Sokolow* at 10, citing *Illinois v. Gates*, 462 U.S. 213, 243, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), fn. 13. But it is also true that the reasonable-suspicion inquiry requires that some acceptable "degree of suspicion" must attach to a noncriminal act. *Id.* So what degree of suspicion attaches here? Is driving a vehicle with a color that does not match the color listed on the vehicle's registration the kind of behavior to which reasonable suspicion of illegal activity readily attaches, as is true of running away after seeing police, *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), or smelling distinctively of marijuana, *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir.2006)? Or is this the kind of behavior that, although unusual, does not yield a high enough degree of suspicion on its own to justify an investigatory seizure, such as possessing luggage that smells of an unidentified chemical, *United States v. Little*, 18 F.3d 1499, 1506 (10th Cir.1994), wearing a wig and sunglasses, *People v. Tate*, 367 Ill.App.3d 109, 116-117, 853

N.E.2d 1249 (2006), or having more than one air freshener in a vehicle, *United States v. Rodriguez-Escalera*, 884 F.3d 661, 670 (7th Cir.2018)?

{¶ 38} I believe that driving a vehicle that is a color other than the color listed on its registration falls solidly in the second category. The majority of jurisdictions addressing this issue tend to agree: so long as a color discrepancy does not constitute a violation of state law, then the discrepancy, standing alone, does not adequately support reasonable suspicion absent some other indicia of criminal activity. *United States v. Uribe*, 709 F.3d 646 (7th Cir.2013); *Schneider v. State*, 2015 Ark. 152, 459 S.W.3d 296; *State v. Teamer*, 151 So.3d 421 (Fla.2014); *Commonwealth v. Mason*, Va.App. No. 1956-09-2, 2010 WL 768721 (Mar. 9, 2010) (unpublished decision); *State v. O'Neill*, N.H.Super. Nos. 06-S-3456 and 06-S-3457, 2007 WL 2227131 (Apr. 17, 2007). *Compare Smith v. State*, 713 N.E.2d 338, 342 (Ind.App.1999) (court upheld traffic stop; held that mismatch in color constituted a traffic violation under Indiana law).

{¶ 39} In this case, it was within the realm of possibility that Hawkins stole a black 2001 GMC SUV, drove around until he found another 2001 GMC SUV (which happened to be white), stole the license plates from the white 2001 GMC SUV, and put those plates on the black 2001 GMC SUV. It was also quite possible that the vehicle was originally white but was painted black at some point in the previous 15 years. And it was also quite possible that the vehicle had always been black and a mistake was made at some point in the Bureau of Motor Vehicles' ("BMV's") record keeping or in the transfer of the vehicle-registration information to the police.[1] Although it is unusual for a vehicle's color not to match the color listed on its registration, there is nothing in Hawkins's suppression hearing

---

1. The latter circumstance seems to have been the case for the vehicle that Hawkins was driving: all of the BMV records prior to June 2016 that are in the record before this court do not indicate any color for the 2001 GMC SUV, and the only document indicating the color as white is a document that was printed from police records and was submitted by the state.

establishing that the drivers of such vehicles are not, by and large, innocent travelers. Thus, subjecting all such drivers to random investigatory seizures offends the Fourth Amendment's basic protections. *See Reid v. Georgia*, 448 U.S. 438, 441, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980).

{¶ 40} Officer Heinz's testimony did not establish that a vehicle/registration color discrepancy, alone, gives rise to a reasonable suspicion that the vehicle's driver is engaged in criminal activity. Instead, Officer Heinz's testimony established that he had a hunch that this might be one of those instances in which the innocent conduct might not actually be innocent. Because nothing more than an inchoate suspicion of criminal activity was present in this case, I would reverse the judgment of the Twelfth District Court of Appeals.

—————————————

Jess C. Weade, Fayette County Prosecuting Attorney, and John M. Scott Jr., Assistant Prosecuting Attorney, for appellee.

Shannon M. Treynor, for appellant.

—————————————