[Cite as *State v. Miller*, 2025-Ohio-141.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

AARON SCOTT MILLER,

    DEFENDANT-APPELLANT.

CASE NO. 14-24-22

O P I N I O N

Appeal from Union County Common Pleas Court
Trial Court No. 2022-CR-0291

**Judgment Affirmed**

Date of Decision:  January 21, 2025

APPEARANCES:

    *Alison Boggs* **for Appellant**

    *Raymond Kelly Hamilton* **for Appellee**

**ZIMMERMAN, J.**

{**¶1**} Defendant-appellant, Aaron Scott Miller ("Miller"), appeals the February 8, 2024 judgment entry of sentence of the Union County Court of Common Pleas. For the reasons that follow, we affirm.

{**¶2**} This case stems from the traffic stop of Miller initiated by Deputy Wyatt Payton ("Deputy Payton") of the Union County Sheriff's Office. On Thanksgiving evening of 2022, Deputy Payton observed Miller driving a red pickup truck eastbound on US 33. As Miller approached Deputy Payton sitting in the median, Deputy Payton saw Miller "abruptly hit his brakes" and travel "into the right lane pretty quickly." (Apr. 4, 2023 Tr. at 16). In response, Deputy Payton entered the highway and followed Miller.

{**¶3**} While following Miller, Deputy Payton observed Miller drift toward the right edge line of the highway and repeatedly look back in the mirrors. Deputy Payton ran a license plate check on the red truck. The computer check revealed the license plate as being registered to a gray vehicle—not a red truck. Deputy Payton activated his overhead lights to initiate a traffic stop based on his suspicion of fictitious license plates.

{**¶4**} During the traffic stop, Miller was unable to provide the vehicle's registration and gave false information regarding his identity. While Deputy Payton investigated Miller's true identity, a canine free-air sniff alerted to the presence of

contraband in the red truck. Deputy Payton advised Miller of his *Miranda* rights. Shortly thereafter, Miller attempted to flee on foot but was quickly apprehended. Following his apprehension, Miller admitted to possessing methamphetamine with the intent to sell and further admitted to having firearms in the red truck.

{¶5} On December 2, 2022, the Union County Grand Jury indicted Miller on Count One of having weapons while under disability in violation of R.C. 2923.13(A)(3), (B), a third-degree felony; Count Two of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B), (I), a fourth-degree felony; Count Three of receiving stolen property in violation of R.C. 2913.51(A), (C), a fourth-degree felony; Count Four of assault in violation of R.C. 2903.13(A), (C)(5), a fourth-degree felony; Count Five of obstructing official business in violation of R.C. 2921.31(A), (B), a fifth-degree felony; and Count Six of resisting arrest in violation of R.C. 2921.33(B), (D), a first-degree misdemeanor. Miller appeared for arraignment on December 22, 2022 and entered pleas of not guilty to the counts alleged in the indictment.

{¶6} On March 2, 2023, Miller filed a motion to suppress evidence. In support of his motion, Miller argued that Deputy Payton did not have probable cause to initiate the traffic stop because "the license plates displayed on the truck were proper and legal." (Doc. No. 16). Following a suppression hearing on April 4, 2023, the trial court denied Miller's motion after concluding "that Deputy Payton had a reasonable articulable suspicion to stop the red truck. The information

available to the deputy was that the license [plates] belonged to a gray vehicle not a red truck." (Doc. No. 49).

{¶7} On April 21, 2023, under a superseding indictment, the Union County Grand Jury indicted Miller on two additional counts: Count Seven of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2), (C)(1)(d), a second-degree felony; and Count Eight of aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(c). Counts Seven and Eight included one-year firearm specifications. Miller appeared for arraignment on April 25, 2023 and entered pleas of not guilty to the counts alleged in the new indictment.

{¶8} On September 11, 2023, Miller withdrew his pleas of not guilty and entered pleas of no contest to all eight counts. The trial court accepted Miller's pleas of no contest, found him guilty, and ordered a pre-sentence investigation.

{¶9} On February 8, 2024, the trial court sentenced Miller to an aggregate minimum term of 11 years in prison to a maximum of 14 years in prison.

{¶10} On March 7, 2024, Miller filed his notice of appeal. He raises a single assignment of error for our review.

**Assignment of Error**

**The Trial Court Erred When It Denied Appellant's Suppression Motion.**

{¶11} In his sole assignment of error, Miller argues that the trial court erred by denying his motion to suppress evidence. Specifically, Miller argues that Deputy

Payton did not have probable cause to enter the highway and follow him. Miller further argues that Deputy Payton did not have any reasonable suspicion of criminal activity to run a license plate check on the red truck. Miller contends that "[t]he Fourth Amendment is designed to stop this type of governmental intrusion in an individual's life." (Appellant's Brief at 11).

*Standard of Review*

{¶12} Appellate review of a suppression ruling involves a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Hawkins*, 2019-Ohio-4210, ¶ 16. "[T]he appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside* at ¶ 8.

*Analysis*

{¶13} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 8-9 (1968); *State v. Mays*, 2008-Ohio-4539, ¶ 7. Any evidence that is obtained during an unlawful search or seizure will be excluded from being used against the defendant. *State v. Womack*, 2021-Ohio-98, ¶ 10 (3d Dist.).

{¶14} "[A] traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about

to commit a crime." *Mays* at ¶ 7. "'The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances.'" *Id.*, quoting *State v. Freeman*, 64 Ohio St.2d 291 (1980), paragraph one of the syllabus. "Therefore, if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." *Mays* at ¶ 8.

{¶15} On appeal, Miller argues that his Fourth Amendment rights were violated when Deputy Payton entered the highway and followed him, and when Deputy Payton ran a license plate check on the red truck. Miller further argues that "Deputy Payton did not have any reasonable, articulable reason to believe Mr. Miller had committed or was committing any traffic offense." (Appellant's Brief at 10).

{¶16} Initially, we note that Miller has provided no case law authority to support his claim that an officer must have probable cause or a reasonable suspicion of criminal activity to enter the highway and follow a vehicle. We posit that no such authority exists because an officer's decision to leave the median and enter a lane of traffic to follow a vehicle does not constitute a "search" or "seizure" under the Fourth Amendment. Thus, we reject Miller's contention that his Fourth Amendment rights were violated when Deputy Payton entered the highway and followed him.

**{¶17}** As to Miller's argument concerning the license plate check performed by Deputy Payton, it is well established that an officer does not need a reasonable, articulable suspicion of criminal activity to conduct a random check of a license plate. *Rocky River v. Saleh*, 139 Ohio App.3d 313, 327 (8th Dist. 2000). "While random *stops* of vehicles without any reasonable suspicion of criminal activity may be constitutionally invalid, random *computer checks* of vehicle license plates are not." (Emphasis in original.) *State v. Bates*, 1987 WL 15817, *1 (9th Dist. Aug. 12, 1987).

> One does not have any expectation of privacy in a license plate number which is required to be openly displayed on his vehicle. R.C. 4503.21. Moreover, a scan of a computer data bank, in order to obtain information relevant to the license number, involves no intrusion. Such a "search" does not interrupt a driver in his travel, nor restrain his person or detain him. In sum, it does not even constitute a "stop" under *Terry v. Ohio*, 392 U.S. 1 (1968).

*Bates* at *1. Accordingly, we reject Miller's claim that his Fourth Amendment rights were violated when Deputy Payton ran a license plate check on the red truck.

**{¶18}** In this case, Deputy Payton testified that he "ran the license plate through the BMV records on LEADS on [the] mobile computer" in his patrol car and the plates returned as being registered to a gray vehicle—not a red truck. (Apr. 4. 2023 Tr. at 17). Deputy Payton further testified that he initiated the traffic stop and spoke "to the driver who claimed to be Jason Miller along with the passenger and advised them that the license plate is coming back to a different colored vehicle.

I requested documentation to either confirm or deny my suspicion of the fictitious plates to which they stated they didn't have." (*Id.* at 25).

**{¶19}** Ohio law prohibits a person from driving a motor vehicle on public highways if the vehicle displays a license plate that is fictitious, counterfeit, or belongs to another motor vehicle. R.C. 4549.08. A violation of R.C. 4549.08 is a misdemeanor of the fourth degree on the first offense, and a misdemeanor of the third degree on each subsequent offense. R.C. 4549.08(C). Moreover, the Supreme Court of Ohio has determined that

> when an officer encounters a vehicle the whole of which is painted a different color from the color listed in the vehicle-registration records and the officer believes, based on his experience, that the vehicle or its displayed license plates may be stolen, the officer has a reasonable, articulable suspicion of criminal activity and is authorized to perform an investigative traffic stop.

*Hawkins*, 2019-Ohio-4210, at ¶ 25. Thus, at the time of the traffic stop, Deputy Payton had a reasonable, articulable suspicion of criminal activity in that he suspected fictitious license plates on Miller's vehicle in violation of R.C. 4549.08. Furthermore, Deputy Payton was justified in stopping the red truck to investigate whether a violation of R.C. 4549.08 had in fact occurred, or if Miller could provide documentation showing that the license plates were valid. *Hawkins* at ¶ 25. Therefore, the trial court correctly determined that the traffic stop was constitutionally valid.

**{¶20}** Based on the foregoing, we conclude that the trial court did not err by denying Miller's motion to suppress evidence. Miller's assignment of error is overruled.

**{¶21}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WALDICK, P.J. and WILLAMOWSKI, J., concur.**

**/hls**